# United States Court of Appeals for the Federal Circuit

---

**NATIONAL ORGANIZATION OF VETERANS ADVOCATES, INC.,**
*Petitioner,*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent.*

---

2011-7191

---

On petition for review pursuant to 38 U.S.C. Section 502.

---

ROMAN MARTINEZ, Latham & Watkins, LLP, of Washington, DC, argued for petitioner.

JOHN J. TODOR, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and JONATHAN TAYLOR, Attorney, United States Department of Veterans Affairs, of Washington, DC,

Before O'MALLEY, PLAGER, AND REYNA, *Circuit Judges.*

PLAGER, *Circuit Judge.*

---

**O R D E R**

---

The National Organization of Veterans' Advocates, Inc. (NOVA) petitioned us to review a rule promulgated by the Department of Veterans Affairs (VA). The rule eliminated certain procedural and appellate rights for veterans appearing before the agency's Board of Veterans' Appeals (Board). During the briefing process before this court, it became clear to all parties involved that the promulgated rule was invalid. In spite of this—and contrary to express promises from VA to NOVA and this court—the Board in subsequent decisions was allowed to continue to follow the invalid rule.

Because we find the Government's conduct in this case to be potentially sanctionable, this is an Order for the Government to show cause why sanctions should not be imposed on the responsible officials. So there will be no misunderstanding, we explain in detail the conduct we consider sanctionable. We also identify the harms we consider to have resulted from the Government's conduct, and suggest ways these harms could be alleviated; the Government's showing in response to this Order will bear on whether sanctions are imposed, and the nature and extent of any such sanctions.

BACKGROUND

The Department of Veterans Affairs administers the laws providing benefits and other services to veterans. *See* 38 U.S.C. § 301 (2006); *see also Henderson v. Shinseki*, 131 S. Ct. 1197, 1200 (2011). A veteran seeking benefits

may submit a claim to a VA regional office, which processes the claim and decides whether to grant benefits to the veteran.  If the veteran disagrees with the regional office's decision, the veteran may request that the Board of Veterans' Appeals review the regional office's determination.  *See* 38 U.S.C. § 7104.

The veterans' benefits system has been calibrated with uniquely pro-claimant principles.  *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998) ("This court and the Supreme Court both have long recognized that the character of the veterans' benefits statutes is strongly and uniquely pro-claimant.").  Consistent with these pro-claimant principles, and pursuant to statute, the VA regulations in 38 C.F.R. § 3.103 provide for certain procedural due process and appellate rights for veterans involved in VA adjudications.

These procedural and appellate rights require VA officials to "explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position." § 3.103(c)(2).  They also require the VA "to assist a claimant in developing the facts pertinent to [his or her] claim" and "to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government." § 3.103(a).  Importantly, the VA has consistently applied the § 3.103 rights both to hearings conducted at the regional offices level and in appellate hearings conducted before the Board of Veterans' Appeals.  *See, e.g.*, *Douglas v. Derwinski*, 2 Vet. App. 435, 440–42 (1992), *aff'g on this ground Douglas v. Derwinski*, 2 Vet. App. 103, 110 (1992); *Costantino v. West*, 12 Vet. App. 517, 520 (1999).

On August 23, 2011, VA issued an immediately-effective new rule (the "2011 Rule") that eliminated some of the rights previously provided under § 3.103.  *See* Rules Governing Hearings Before the Agency of Original Juris-

diction and the Board of Veterans' Appeals, Clarification, 76 Fed. Reg. 52,572-01 (Aug. 23, 2011). The 2011 Rule limited the provisions governing hearings under § 3.103 so that they applied "*only* to hearings conducted before the VA office having original jurisdiction over the claim." *Id.* at 52,574 (emphasis added). In other words, veterans would no longer have the previously available procedural due process and appellate rights during board appeals. Despite this significant departure from the pro-claimant procedures espoused by § 3.103, VA stated that the change "merely clarifie[d] current procedures" and therefore was excepted from the notice-and-comment and delayed effective date requirements of the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* (APA). *Id.* at 52,573.

On September 9, 2011, NOVA petitioned us to review the 2011 Rule, arguing that VA promulgated the 2011 Rule without following the mandatory notice-and-comment requirements of the APA set forth in 5 U.S.C. § 553. NOVA subsequently argued that VA's written explanation for the 2011 Rule also contained significant errors of fact and logic, rendering it arbitrary and capricious under 5 U.S.C. § 706(2)(A).

While NOVA initially petitioned us to review the validity of the 2011 Rule, VA's conduct during the briefing process before this court quickly generated another dispute. NOVA submitted its opening brief to us on December 22, 2011. Several days before VA's responsive brief was due, VA petitioned for a first enlargement of time to file its brief due to "other important matters." Resp't's Mot. at 2, January 27, 2012. We granted VA's petition, stating that no further extensions should be expected.

On March 5, 2012, VA petitioned for a second enlargement of time. VA stated in its petition that it planned to publish a repeal of the 2011 Rule in the Federal Register. In discussions with VA regarding the petition, NOVA had indicated that it would not oppose VA's

petition, but only if VA promised not to apply the invalid 2011 Rule moving forward. VA agreed. VA represented to both NOVA and to this court that "the Department of Veterans Affairs (including the Board of Veterans' Appeals) will not apply the provisions of the August 23, 2011 amendment between now and when the repeal of that amendment takes effect," and thus, "the requested extension would not create any prejudice to petitioner." Resp't's Second Mot. at 3. In light of these representations, we once again granted VA's petition, indicating that no further extensions should be anticipated.

Having already received two extensions of time, on April 27, 2012, VA petitioned for a third enlargement of time. VA stated that it wanted to allow the then published repeal to become effective prior to submitting its brief.[1] VA's third petition was prefaced upon and reconfirmed the Government's commitment not to apply the provisions of the 2011 Rule—which VA by that point had publicly admitted was a violation of the APA. NOVA opposed the extension of time with well-founded concerns that any additional delay would result in more cases becoming final—making it significantly harder, and perhaps impossible, for some veterans harmed by the invalid rule to obtain relief. In response, VA stated that it was not aware of "any instances" in which the 2011 Rule was applied after March 5, 2012, but if NOVA identified any cases, the cases would be "investigated and dealt with by the VA Office of the General Counsel." Reply Supp. Resp't's Third Mot. at 5, May 3, 2012. In light of these

---

[1]    The VA issued a repeal on April 18, 2012, stating that the VA "should have followed the notice-and-comment procedure of the Administrative Procedure Act (APA)." Rules Governing Hearings Before the Agency of Original Jurisdiction and the Board of Veterans' Appeals; Repeal of Prior Rule Change, 77 Fed. Reg. 23,128-01, 23,128 (April 18, 2012).

representations, we ignored our twice stated unwillingness to allow further extensions and granted this third extension of time.

Despite VA's repeated commitment not to apply the invalid 2011 Rule, NOVA has submitted papers to this court indicating that the Board relied upon the 2011 Rule in a substantial number of cases after March 5, 2012. NOVA provided a list of the cases to VA in hopes that the VA would live up to its word to investigate and deal with the cases; VA has declined to do so.

Jurisdiction to review this case arose under 38 U.S.C. § 502. We also have jurisdiction to review the Government's misconduct as a collateral issue, regardless of any concession VA now makes regarding the continued vitality of the 2011 Rule. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990) (noting that proceedings relating to costs, attorneys' fees, contempt(s), and other sanctions are collateral to the original proceeding and may be heard even after the original proceeding has been terminated).

DISCUSSION

I.

We first address the validity of the 2011 Rule. In its brief, NOVA argued that VA promulgated the 2011 Rule without following the mandatory notice-and-comment requirements set forth in 5 U.S.C. § 553 of the APA. NOVA argued that the 2011 Rule was a substantive rule and VA's actions ran afoul of our decision in *Military Order of Purple Heart of USA v. Sec'y of Veterans Affairs*, 580 F.3d 1293 (Fed. Cir. 2009).

We find NOVA's arguments regarding VA's violations of the APA compelling, and ultimately, so did the Government. In fact, to its credit the Department of Justice refused to defend the procedural validity of the 2011 Rule, and VA issued a repeal of the Rule. This court also noted

from the bench at oral argument—and Government counsel agreed—that the 2011 Rule was void *ab initio*. After oral argument, VA issued an addendum to its repeal of the 2011 Rule confirming that the repeal is retroactive and "appl[ies] to decisions issued by the Board on or after August 23, 2011," the date that the Rule at issue was first promulgated. Rules Governing Hearings Before the Agency of Original Jurisdiction and the Board of Veterans' Appeals; Repeal of Prior Rule Change, 77 Fed. Reg. 70,686-01, 70,686 (November 27, 2012). The official repeal of the 2011 Rule and the concessions made at oral argument confirm the invalidity of the 2011 Rule, and render any further discussion regarding the validity of the Rule unnecessary.

## II.

The issue remaining before us is what action we should take in response to VA's conduct, including its failure to abide by its commitments. We first address why we believe that action on our part is appropriate.

## A.

The VA's conduct in this matter troubles the court on multiple levels. First, VA's conduct did not involve an isolated mistake. Starting on March 5, 2012, VA began representing in court filings and in other communications with NOVA that it would immediately stop applying the 2011 Rule. VA also made various representations implying that the Board was not applying the Rule. In spite of these representations, NOVA identified sixty cases in which the invalid 2011 Rule may have been applied—and that was just in the month of March. Thirty of these cases expressly refer to the invalid 2011 Rule, and many if not all of these thirty cases declare that the Rule renders § 3.103 inapplicable.[2] We are only left to wonder

---

[2] For purposes of this Order we accept NOVA's data, although the Government is entitled to challenge the

how VA was able to represent to us in its May Supplemental Reply that it was not aware of "any instances" in which the Board applied the 2011 Rule after March 5th.

In more than one instance, VA said that it would investigate and rectify or deal with any application of the invalid 2011 Rule that occurred after March 5, 2012. Indeed, the Government concedes that it "repeatedly" told NOVA that if NOVA found any mistakes, then the Government would "inform the VA Office of the General Counsel to rectify the matter." Reply Supp. Resp't's Third Mot. at 5, May 3, 2012. NOVA identified cases to VA, and from the record before us, it appears that VA has failed to honor its commitments.[3]

As a consequence, VA's conduct resulted in harm to NOVA, its attorneys, and this court. Each has been required to divert resources from other important activities in order to address conduct that should never have occurred in the first place. Worse yet, VA's conduct has potentially harmed not just plaintiff NOVA's organization but the very individuals it represents and that VA is tasked with assisting. At least as early as March 5, 2012, the Government acknowledged that the 2011 Rule was invalid under the APA, but VA allowed the Rule to be applied well beyond that date. Applying the invalid 2011 Rule stripped veterans of assistance that the Board would have otherwise been required to provide. Given this context, VA's failure promptly to stop the Board from using the 2011 Rule is entirely unacceptable.

---

numbers in its response. We are mindful that the exact number of affected veterans is not the issue—if one of the injured veterans represented by NOVA was denied the benefits the law provides, it would be one too many.

[3] Apparently VA started analyzing cases but that effort was not carried out.

Finally, VA's conduct troubles the court because, rather than remedy harm caused by its broken promises, VA attempted to shift the burden to others such as NOVA, attorneys assisting veterans (oftentimes on a pro-bono basis), or to the harmed veterans themselves. In particular, VA indicated in a letter to NOVA dated November 5, 2012,[4] that the routine appellate (or post-decisional, in the case of Board reconsiderations) process was the most appropriate venue for resolving affected cases. VA indicated in its 2011 Rule addendum that motions for reconsideration and appeals provided "adequate avenues of relief to any claimants who may have been adversely affected by the repealed rule." Rules Governing Hearings Before the Agency of Original Jurisdiction and the Board of Veterans' Appeals; Repeal of Prior Rule Change, 77 Fed. Reg. 70,686-01, 70,687 (November 27, 2012). The usual procedural processes, initiated by the claimant, for relief from erroneous decisions may be appropriate under usual circumstances; here they are not.

VA attempted to justify its conduct at oral argument, arguing that it did not intentionally violate its commitments and that its actions were not in bad faith. But the petitions for extension of time were not based upon representations of intent to perform certain actions, but rather were based upon representations that those actions were actually being performed. VA's commitments required VA to ensure that its statements to NOVA and this court were true and that the invalid Rule was not being applied; only by doing so could VA avoid harming the parties involved. The unwarranted denial of benefits means real-

---

[4] Letter from John J. Todor, Senior Trial Counsel, U.S. Dep't of Justice, to Roman Martinez, Esq., counsel for NOVA (November 5, 2012) (submitted in Notice of Supplemental Authority Pursuant to Rule 28(j)).

world consequences to veterans. Promises of hypothetical relief do not pay for food or provide needed medical care.

Additionally, VA's conduct and written communications refute its assertions that its violations were unintentional. For example, VA effectively stated that it would not investigate and deal with illegal application of the 2011 Rule because it would burdensome.[5] In other words, VA was well aware of this commitment and intentionally elected not to fulfill it.

VA also alleges that it instructed the Board to cease applying the Rule. VA went as far as to label NOVA's concerns unfounded because the Board had supposedly been instructed to cease applying the rule on March 5, 2012. *See* Reply Supp. Resp't's Third Mot. at 5, May 3, 2012. However, the only communication that VA confirms actually reached the Board members and their staff was a memorandum circulated on April 4, 2012, one month after the promised date. VA also alleged that the Board's Principal Deputy Vice Chairman had stated that her office would instruct the Board to cease applying the amendments to § 3.103.[6] The record VA presented to the court, however, never confirms if (or when) this instruction actually occurred. And the Board's extensive reliance on the invalid 2011 Rule throughout the month of March 2012 confirms that—irrespective of what VA alleges that it did—VA failed to ensure that the 2011 Rule was not being applied by the Board.

---

[5] "Upon review, the VA Office of General Counsel concluded that your request that VA identify and remedy any cases of prejudice due to the Board's application of the August 23 amendments since March 5, 2012, would involve extensive review and would be likely to identify very few, if any, cases of specific and remediable prejudice." Letter from John J. Todor, *supra* note 4.

[6] *See* Letter from John J. Todor, *supra* note 4.

## B.

VA's failure to abide by its commitments to this court and opposing counsel raises the question of whether we should exercise our inherent or statutory powers to issue sanctions against the agency and the responsible officials.

Courts of justice are vested by their very creation with power "to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 19 U.S. 204, 227 (1821). These powers include the power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962). A court may rely on its inherent powers to award monetary sanctions when a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

Courts of justice also have the ability to "fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45. And while sanctions must be fashioned with restraint and discretion, courts of justice can fashion appropriate monetary and nonmonetary sanctions to rectify misbehavior. Examples of sanctions fashioned by courts include: awarding attorneys' fees (*see id.* at 55–58); barring a criminal defendant who disrupts a trial from the courtroom (*see Illinois v. Allen*, 397 U.S. 337 (1970)); ordering a new trial on all issues (*see Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1206 (Fed. Cir. 2005)); and issuing reprimands (*see In re Bailey*, 182 F.3d 860, 864–65 (Fed. Cir. 1999)).

Given the Government's conduct in this case, the court orders the Government to show cause why it should not be sanctioned under this court's inherent authority. It seems that sanctions may be needed to motivate VA in the future to treat its commitments and representations to this court and opposing counsel with the seriousness to which they are entitled.

While the court is prepared to consider sanctions for misconduct by the Government and its responsible officials, we recognize that doing so imposes additional burdens on all the parties as well as this court. As an alternative to entering into sanctions proceedings, we are willing to first receive and review a submission from the Government that 1) provides a plan for how VA intends to identify and rectify harms caused by VA's failure to abide by its representations, and 2) explains why VA's plan renders sanctions proceedings unnecessary. VA may already be undertaking such a plan due to VA's emphasis on accountability.[7]

In preparing a plan for submission to this court, the Government may wish to address the following concerns:

1. Does the VA propose to provide individual notice of the problem to every veteran who, during the relevant time period, may have had a case affected by the Board's erroneous application of the 2011 Rule?[8]

---

[7] VA proclaims to "perform in a manner at all times that makes [VA] accountable, responsible, and answerable to veterans and their families . . . ." Mission, Vision, Core Values & Goals, U.S. Dep't of Veterans Affairs (October 3, 2011) http://www.va.gov/about_va/mission.asp.

[8] The relevant time period ends the last date the Board may have applied the invalid Rule to cases before it. At a minimum it includes all cases heard or acted upon beginning March 5, 2012. Further, VA may wish to explain its intentions with regard to cases heard or acted upon from the date the invalid Rule was first promulgated, August 2011; the Government has acknowledged that the Rule was void *ab initio*, and has publically declared that the repeal of the Rule "appl[ies] to decisions issued by the Board on or after August 23, 2011." *See supra*.

2. Does the VA intend to conduct reviews of the cases heard or decided by the Board during the relevant time period, and take appropriate corrective action?

3. Does the VA's proposed plan satisfy or remedy each of its broken commitments to this court and to NOVA, including its commitments not to apply the 2011 Rule and to rectify harm caused thereby?

4. Does the plan address any procedural and timeliness hurdles that may impact affected veterans who seek redress for the harms caused by the invalid Rule, including those who seek redress directly from the VA?

We expect that the Government will choose to confer with NOVA regarding its proposed plan so that any plan submitted to the court fully addresses the harms caused by the Government's conduct and minimizes the need for further orders by this court.

### CONCLUSION

Accordingly, we grant the Government a period of sixty (60) days to respond to this Order To Show Cause. If necessary, NOVA will have a period of thirty (30) days following the Government's submission in which to file a formal response with its comments and recommendations.

SO ORDERED

FOR THE COURT

| March 21, 2013 | /s/ S. Jay Plager |
|:---:|:---|
| Date | S. Jay Plager |
| | Circuit Judge |